**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>ALUMAX INC,<br><br>    Debtor. | CASE NO. 24-05312 (MAG)<br><br>CHAPTER 11<br><br><br>FILED & ENTERED ON 07/21/2025 |

**OPINION AND ORDER**

Pending before the court is a Motion for Relief from Order Approving Stipulation Pursuant to Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(b)(5) and (6) filed by Alumax Inc. on June 17, 2025. Dkt. # 113 (the "Motion to Set Aside Order"). Commercial Equipment Finance, Inc. ("CEFI") filed a Motion Requesting Dismissal or Conversion to Chapter 7 and Opposition to Motion to Set Aside Order Granting Stipulation and Request for Relief from Stay on July 9, 2025, at Dkt. # 129. CEFI's request for dismissal or conversion to Chapter 7 under 11 U.S.C. § 1112(b) is scheduled to be heard on July 30, 2025. For the reasons stated below, the Motion to Set Aside Order is denied.

On December 6, 2024, Alumax filed a petition for relief under Chapter 11. Dkt. # 1. Debtor listed in schedule A/B four 2021 Isuzu NPR valued at $135,980 and two units of 2021 Ford Transits valued at $45,828. Id. at p. 13. On schedule D, Alumax listed CEFI as a secured creditor with liens in the amounts of $48,099.44 over the Ford Transits and $141,037.30 over the Isuzu NPRs. Id. at p. 15.

Following Alumax's request, on June 2, 2025 (Dkt. # 103), the court entered an order to extend the exclusivity period for the filing of the Plan and the Disclosure Statement to September 13, 2025. Dkt. # 108.

On January 2, 2025, CEFI filed secured claim number 1, in the amount of $31,446.83; secured claim number 2, in the amount of $23,516.75; secured claim number 3, in the amount of $42,371.70; and secured claim number 4, in the amount of $269,257.20. On March 11, 2025, Alumax filed an Objection to Proof of Claim #2. Dkt. # 50. Alumax objected CEFI's claim number 2 to the extent it asserted secured status. Id. at p. 2. On April 21, 2025, CEFI filed an amended secured claim number 2-2, for the secured amount of $23,516.75. CEFI also filed a Reply to Debtor's Objection to Claim #2, on May 2, 2025. Dkt. # 95.[1] On June 18, 2025, Alumax filed an Objection to Proof of Claim #2-2. Dkt. # 117. Alumax objected to the amended claim 2-2 and reasserted that CEFI's claim should be disallowed in its entirety or, in the alternative, reclassified as an unsecured claim. Id. at p. 8.

On March 7, 2025, CEFI filed a Motion for Relief of the Automatic Stay Under 11 U.S.C. § 362. Dkt. # 46. CEFI requested the lifting of the automatic stay as a result of Alumax's failure to provide adequate protection to the creditor and its failure to continue making post-petition payments, despite its retention and use of CEFI's loan collateral. Id. at p. 2.

On April 11, 2025, Alumax and CEFI filed a Stipulation Regarding Contested Matters Between Debtor and CEFI. Dkt. # 74. As stated by the parties, the Stipulation resolved the Motion for Relief from Stay filed by CEFI on March 7. 2025 (Dkt. # 46), among other matters. Id. at p. 1.

Through the Stipulation, the parties agreed to the following:

---

[1] Upon the filing of the new claim, the court entered an order on May 6, 2025, denying Alumax's first objection as moot. Dkt. # 99.

2

1. Alumax will retain all the equipment/collateral that secure CEFI's claims. Id. at p. 2-3. As stated in the Stipulation, CEFI's claims are secured by the following equipment: proof of claim #1 is secured by a 2019 Linde HT25T Internal Combustion LPG Forklift Truck and all present and future attachments, accessories, replacement parts, repairs and additions and substitutions; proof of claim #2 is secured by a 2021 Chicago Rivet Model 173 Four Head Machine Air Operated and all present and future attachments, accessories, replacement parts, repairs and additions and substitutions; proof of claim #3 is secured by 2 Ford Transit Connect XL vehicles; and proof of claim #4  is secured by 4 Isuzu NPR HD vehicles.

2. following the approval by the Bankruptcy Court, and continuing until confirmation, Alumax will make monthly contractual payments to CEFI in the total amount of $7,517.63;

3. the accumulated post-petition arrears would be recognized as a valid administrative expense under 11 U.S.C. § 503, to be paid in a lump sum at the Effective Date of Debtor's Plan of Reorganization;

4. Alumax will maintain insurance coverage on all equipment and vehicles at all times, with CEFI listed as a loss payee;

5. The pre-petition arrearage related to claim #1 shall be paid through twenty-four (24) monthly payments of $312.83, beginning the first month after Court approval of the Stipulation; the pre-petition arrearage related to claim #3 shall be paid 100% through the life of the plan starting on the Effective Date; and the pre-petition arrears related to claim #4 will be paid in the monthly contractual payments contemplated in the Stipulation.

6. If Alumax obtains an offer from a third party to purchase any of the Isuzu vehicles for a commercially reasonable price, and with CEFI's written approval, CEFI agrees to release its lien over the vehicle upon receipt of the sale proceeds. If CEFI desires to sell any of the vehicles, Alumax will only surrender them at a price agreed to and consented to by Alumax.

7. Alumax would assume the lease referenced in Claim #1.

8. CEFI's Motion for Relief from the Automatic Stay filed on March 7, 2025 (Dkt. #46) will be deemed moot upon Court approval of the Stipulation, subject to Alumax's compliance with the payment terms and other obligations set forth therein.

9. In the event of a default by Alumax in making any payment or complying with the terms required under the Stipulation, CEFI will provide a written notice of default to Alumax and its counsel. Alumax will have fifteen days from receipt of such notice to cure the default. If Alumax fails to timely cure the default, CEFI may seek relief from the automatic stay from the Bankruptcy Court.

Also, the Stipulation clearly states that "[T]he parties believe this agreement represents a fair and reasonable resolution that will provide adequate protection to CEFI while allowing the reorganization process to proceed efficiently." The parties also agreed that the proposed terms are "fair and reasonable under the circumstances." Id. at p. 6.

On May 6, 2025, the court entered an order approving the Stipulation, as the objection period elapsed and no objections were filed. Dkt. # 100.

On June 17, 2025, Alumax filed the Motion to Set Aside Order. Dkt. # 113. Alumax alleged that it operates in the aluminum manufacturing industry and relies heavily on imported aluminum to sustain its operations. As a result, its cost structure is especially vulnerable to

4

international trade policy shifts, particularly federal tariff actions. Alumax alleged that the increase in aluminum tariffs from 10% to 25% enacted by the U.S. Government in February 2025, and the Presidential Proclamation issued on June 3, 2025, which doubled aluminum tariffs from 25% to 50% ad valorem, represented a 400% increase in aluminum tariffs from 10% rate that existed when the present bankruptcy case began. Id. at p. 4. Alumax argued that by the time the Stipulation was negotiated and approved, the full financial effect of these new policies had not yet fully materialized. Id. Debtor added that under these conditions, it is no longer able to sustain the payment obligations imposed by the Stipulation. Id. at p. 5. Additionally, Alumax alleged that the vehicles referred to in the Stipulation, specifically the Ford Transit and Isuzu vehicles, are no longer essential to its operations. Id. Alumax argued that the change in circumstances created by the increase in tariffs make the payment obligations agreed to in the Stipulation no longer feasible and sustainable. Therefore, relief from the order approving the Stipulation is merited under Fed. R. Civ. P. 60(b)(5) and (6).

Upon the court's order for CEFI to respond to the Motion to Set Aside Order, on July 9, 2025, CEFI filed Motion Requesting Dismissal or Conversion to Chapter 7 and Opposition to Motion to Set Aside Order Granting Stipulation and Request for Relief from Stay. Dkt. # 129. CEFI argued that Debtor's request for relief from the order approving the stipulation should be denied; that the present case should be dismissed or converted to Chapter 7 and requested that relief from the automatic stay be granted. Regarding the opposition to the motion to set aside the order granting the Stipulation, CEFI argued that Alumax has not met the strict burden of proof required to justify the granting of relief in its favor. CEFI alleged that the potential changes in U.S. trade policy, including increasing tariffs could be anticipated or reasonably expected when Alumax filed its petition. Further, one month prior to the filing of the Stipulation, the federal

government had already raised tariffs on aluminum and steel products. It asserted that the cases cited by Alumax state that relief under Fed. R. Civ. P. 60(b)(5) and (6) is reserved for exceptional and unforeseeable circumstances that render the enforcement of an order manifestly unjust. CEFI concluded that the tariff fluctuations cited by Alumax are precisely the kind of foreseeable risks inherent in the aluminum trade at the time the Stipulation was filed. Therefore, CEFI argued that Alumax failed to meet its heavy burden to show the 'extraordinary circumstances' that would justify setting aside a final, court approved agreement. As discussed below, the court agrees with CEFI.

A party moving for relief under Fed. R. Civ. P. 60(b), made applicable to bankruptcy cases through Fed. R. Bank. P. 9024, must show "that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted." Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002).

Fed. R. Civ. P. 60(b)(5), allows relief from a judgment or order when "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Rule 60(b)(5) requires that continued enforcement of the order be "detrimental to the public interest" before relief can be granted. Flores v. Huppenthal, 789 F.3d 994, 1001 (9th Cir.2015). The equitable considerations applicable to Rule 60(b)(5) cannot merely involve private interests. In re Brown, 547 B.R. 846, 855 (Bankr. S.D. Cal. 2016); see also W.L. Gore & Assoc., Inc. v. C.R. Bard, Inc., 977 F.2d 558, 562–63 (Fed.Cir.1992). This is because the public's interest in the finality of judgments and the

6

sanctity of bargains outweighs considerable injury in determining whether changed circumstances warrant relief in purely private litigation. Id.

Fed. R. Civ. P. 60(b)(6) authorizes relief from an order by "any other reason that justifies relief." As stated in the cases cited by Alumax, "[A] district court will grant a Rule 60(b)(6) motion only if it finds 'exceptional' circumstances that justify 'extraordinary' relief." Valley Citizens for a Safe Env't v. Aldridge, 969 F.2d 1315, 1317 (1st Cir. 1992). "It is certainly true that it is the policy of the law to favor a hearing of a litigant's claim on the merits. It is also true that this policy must be balanced against the desire to achieve finality in litigation." 11 C. Wright & A. Miller, Federal Practice and Procedure § 2857 at 159.

The court notes that Debtor is moving to set aside the order granting the Stipulation under Rule 60, but what Debtor seeks is that the court relieve them from its obligations under the Stipulation. However, it is undisputed that the terms of the Stipulation were negotiated at arms' length and the order granting the Stipulation was entered after due notice was given to all parties and having received no objections to the same.

The Supreme Court of Puerto Rico has allowed courts to intervene in contracts (in this case in the form of the Stipulation filed with the court) in which good faith could be lacerated or an injustice would be caused by ordering the specific compliance of a contract based on the doctrine of *rebus sic stantibus*. Banco Popular de Puerto Rico v. Sucn. Talavera, 2008 TSPR 132, 174 P.R. Dec. 686, 695, 2008 Juris P.R. 152 (2008). However, *rebus sic stantibus* may only be applied under extraordinary circumstances. Termination of a contract under *rebus sic stantibus* is not appropriate if the ensuing hardship is part of the normal risks related to the contract. Id. at 702. There are no extraordinary circumstances present in this case and the increase in tariffs is part of the normal risks related to this type of business. In fact, Debtor

7

recognizes that by March 12, 2025, tariffs on steel and aluminum products had already been raised. The Stipulation entered into willingly and voluntarily by the parties was filed on April 11, 2025, and approved by the court on May 6, 2025. Hence, Debtor cannot argue that the increase in tariffs was unforeseeable when the Stipulation was filed or that the hardships caused to its business operations by said increase are not part of the normal risks related to the Stipulation. As such, the increase in tariffs cited by Debtor do not constitute extraordinary or surprising circumstances that warrant the relief from the order approving the stipulation. On the contrary, the relief requested by Debtor would cause unfair prejudice to CEFI, eliminating its rights under the stipulation.

Finally, the Stipulation provides that the parties believe that the proposed term of the agreement are fair and reasonable under the circumstances. Considering the date that the Stipulation was filed, these circumstances included the potential increase in aluminum and steel tariffs imposed by the U.S. Government. Alumax has failed to show extraordinary circumstances that warrant the relief of an order entered to approve a stipulation negotiated, drafted and agreed to by the parties.

In conclusion, the Motion to Set Aside Order (Dkt. # 113) is denied and the Motion Requesting Dismissal or Conversion to Chapter 7 and Opposition to Motion to Set Aside Order Granting Stipulation and Request for Relief from Stay, at Dkt. # 129 **is partially granted regarding the opposition to the request to set aside the order approving the Stipulation**. As scheduled, a hearing to consider CEFI's Request for Dismissal or Conversion to Chapter 7 under 11 U.S.C. § 1112(b) and any oppositions thereto, and Alumax's Objection to Proof of Claim #2-2 (Dkt. # 117) will be held on July 30, 2025 at 10:00 A.M. at the U.S. Bankruptcy Court for the

District of Puerto Rico, Jose V. Toledo Federal Building and Courthouse, 300 Recinto Sur, Third Floor, Courtroom # 3, San Juan, Puerto Rico.

IT IS SO ORDERED.

In Ponce, Puerto Rico, this 21st day of July 2025.

María de los Ángeles González
United States Bankruptcy Judge